# Modes's Estate.    Canfield's Appeal.

1. The Act of April 8th 1872 (Lien of Laborers' Wages), does not give laborers a preference for their claims over an execution-creditor, whose judgment was on a contract made before the passage of the act.

2. Such laborers, &c., do not, under the Act of 1872, occupy the position of execution-creditors.

3. Canfield, in December 1871, agreed that he would furnish Modes with materials for the manufacture of glass, and advance him money to assist him in carrying on his business, Modes agreeing to give Canfield a lien, by way of security, on all the products of the glass works, Canfield to have a right to sell the goods if he should desire and retain the proceeds to apply to the indebtedness, and if Modes should sell, Canfield to have the avails, and upon settlement Canfield to pay to Modes any over-payment. *Held,* that the contract was good between the parties, but invalid as to execution-credtors who levied before Canfield took possession of the goods.

4. The laborers' claim being after the contract their preference would impair Canfield's contract to their amount, and were to be disallowed, on a distribution of the proceeds of sale of Modes's property under executions, although the execution-creditors not entitled to a preference would take the fund and Canfield receive nothing.

November 19th 1874. Before Agnew, C. J., Sharswood, Mercur and Gordon, JJ.

Appeal by John B. Canfield from the Court of Common Pleas of *Beaver county:* Of October and November Term 1874, No. 119. In the distribution of the proceeds of the sheriff's sale of the personal property of William Modes.

Canfield and Modes had entered into the following agreement:—

" Said Canfield to furnish soda-ash and other materials to said Modes, advance money to him, accept his drafts, and otherwise become liable on his paper for his accommodation, for the purpose of assisting and enabling the said Modes to carry on said business.

" Said Modes, in consideration of this agreement and assumption on part of Canfield, to give to Canfield a lien, by way of security therefor, upon all the products of the glass works of him, the said Modes, as the same may be manufactured, at the rate or in the proportion of one dollar in value of said goods for every seventy-

[Modes's Estate.]

five cents of material furnished, moneys advanced, and liabilities incurred by said Canfield, as aforesaid. The said Canfield to have the right to sell any or all of said goods, if he should so desire, and in that case to retain the proceeds, to be applied to said indebtedness ; or, if the said Modes should sell the same, then the said Canfield to receive the avails thereof, whether in money or paper, given by the purchaser or purchasers thereof.

" If, on final settlement, it should be found that out of said goods and securities, the said Canfield should. have received more than enough to satisfy the said indebtedness of said Modes to him, the surplus then to be paid over to Modes.

" This agreement to commence and take effect on the 15th Dec. 1871."

Afterwards Henrici & Lenz, trustees, &c., issued executions, No. 35 and 36 to March Term 1873 of the Court of Common Pleas of Beaver county against William F. Modes and others. Dominick Betchetter issued execution No. 37 to the same term against William F. Modes ; John Miller issued an execution No. 38 to the same term against William F. Modes. These executions were all put into the hands of the sheriff at the same hour and a levy made on the real and personal property of the defendants.

John B. Canfield issued an execution against " William F. Modes as Beaver Falls Glass Company," No 82 to the same term. On the 8th of January 1873 a levy was made on Canfield's execution on the same property that had been levied on under the previous executions subject to those levies. The personal property was sold on the 29th of January 1873, under the executions for $14,866.66.

Joseph Ledlie, Esq., was appointed auditor to report distribution of the fund arising from the sheriff's sale.

He reported :

" It is conceded that William F. Modes was doing business as the Beaver Falls Company, and that he was insolvent on the 18th day of December 1872.

" The executions of Henrici & Lenz, Dominick Betchetter and John Miller, were, it appears, by the endorsement of the sheriff on said writs, received by him on the 18th day of December 1872, at five minutes after two o'clock in the afternoon. The next execution in the order of time is that of J. B. Canfield, which, it appears, was received by the sheriff on the 8th day of January 1873, at 12 M.

" The proceeds of sale are claimed by Henrici & Lenz, Dominick Betchetter and John Miller, by reason of their several executions having been first issued and placed in the hands of the sheriff. An effort was made to show that Henrici & Lenz, through their agent and attorney, Mr. Hice, had made an agreement or arrangement with W. F. Modes the defendant, not to enforce the

collection of their judgments against him; and that in pursuance of that agreement, John B. Canfield had endorsed notes and made advancements to Modes, and that the executions of Henrici & Lenz were issued in violation of that agreement, and were postponed.

" It appears, by an article of agreement between John B. Canfield and W. F. Modes, offered in evidence, that Canfield was to furnish soda-ash and other material, advance money, accept drafts, and otherwise assist him in carrying on his business in the glass works, and in consideration therefor, the said Modes was to give Canfield ' a lien, by way of security therefor, upon all the products of the glass works, at the rate of one dollar in value of said goods, for every seventy-five cents of material furnished, money advanced, and liability incurred by Canfield.' * * *

The auditor stated the evidence of the agreement between Henrici & Lenz and their attorney and proceeded :—

" In view of these facts, the auditor is of the opinion that the alleged agreement between Mr. Hice and W. F. Modes is not sustained, and therefore the auditor is relieved from any inquiry as to its effect.

" The property of W. F. Modes, consisting of manufactured glassware, material, &c., sold by the sheriff on the above-recited writs of fi. fa., for the sum of $14,866.66, which is the fund for distribution in this proceeding, and is, in the opinion of the auditor, liable for the claims for wages of clerks, mechanics and laborers in the employ of said Modes, for labor and services which accrued within a period of six months prior to the date of the levy and sale by the sheriff, not exceeding two hundred dollars each. It appears from the testimony, that the employees of W. F. Modes were generally paid to November 1st 1872, and that more than two hundred dollars of those not so paid accrued within six months prior to the date of the levy. * * * The auditor holds that the fund is applicable, first, to costs and expenses of audit; second, to claims of the laborers, mechanics and clerks, and third, the balance is applied to fi. fas. Nos. 35, 36, 37 and 38, of March Term 1873, *pro ratâ;* said writs having all been placed in the hands of the sheriff at the same time, and the fund not being sufficient to pay them in full."

The auditor, in accordance with the principles of his report, after deducting expenses, &c., awarded to the laborers, the amount of their claims, viz., $9926.30, and the remainder *pro ratâ* to executions No. 35, 36, 37 and 38.

Exceptions were filed to the report.

The court overruled the exceptions, confirmed the report and decreed distribution accordingly. Canfield appealed from the decree of the court. He assigned for error, decreeing to the laborers, &c., the amount of their claims, awarding to Henrici

[Modes's Estate.]

& Lentz any part of the fund; and not awarding the fund to Canfield.

The claim of laborers for preference in the distribution was under the Act of April 9th 1872, sect. 1, Pamph. L. 47, 2 Br. Purd. 1464, pl. 1. It provides that the wages of any laborer, &c., for any period not exceeding six months immediately preceding the sale, &c., of works, mines, manufactories or business, &c., shall be a lien upon such manufactory, &c., and shall be preferred and first paid, not exceeding $200 out of the proceeds of the sale of such manufactory, &c., "provided that this act shall not be so construed as to impair contracts existing or liens of record vested prior to its passage."

*D. F. Patterson* and *Wilson* (with whom was *T. C. Lazear*), for appellant.—Under the agreement Modes was only bailee to sell for Canfield: McCullough *v.* Porter, 4 W. & S. 177; King *v.* Humphreys, 10 Barr 217; Rowe *v.* Sharpe, 1 P. F. Smith 26; Becker *v.* Smith, 9 Id. 469.

*E. R. Dougherty* (with whom were *F. Wilson, J. F. Dunlap* and *H. R. Moore*), for appellees, as to the claim of the laborers cited Reed's Appeal, 6 Harris 235; Vastine's Appeal, 2 Wright 164.

Mr. Justice GORDON delivered the opinion of the court, January 4th 1875.

In confirming the auditor's report, the court did not properly consider the proviso to the Act of April 9th 1872.

That act, in providing for the liens of mechanics, laborers, &c., upon the property of the employer, especially provides that it "shall not be so construed as to impair contracts existing, or liens of record vested, prior to its passage." The contract between Canfield and Modes was made in 1871.

By its terms Canfield was to supply Modes with material and money with which to conduct the business of manufacturing glass, to the amount of seventy-five per cent. of the wares turned out; these, as they were manufactured, were either to be delivered to Canfield, or sold for his benefit; in other words, he was to have a lien upon the goods until his advancements were paid. This contract was perfectly good between the parties, though invalid as to execution-creditors, who might levy on the goods before they passed into Canfield's possession. But mechanics and laborers do not, under the Act of 1872, occupy the position of execution-creditors. Their lien is dependent upon the act, and subject to its provisos. It, however, provides that such liens shall not impair contracts existing before its passage.

The money in court for distribution was raised from the wares

which were to furnish Canfield's security, and the amount so raised is insufficient, were it paid over to him, to meet the amount he advanced to manufacture those wares.   Now treating the intervening executions as out of the case, it is clear that if we prefer the liens of these laborers, we impair Canfield's contract just to the extent of the money it will take to satisfy them.   The apparent difficulty is, that parties, not preferred by the Act of 1872, are thus let in upon the fund which they otherwise might not reach. This, however, is Canfield's misfortune.   Were it not for these he would take the whole fund.   We cannot see, therefore, that the laborers are at all prejudiced by this condition of affairs.   We perceive no other error in the proceedings of the court below, and upon a redistribution of the fund, the only material alteration of the auditor's report will be the omission therefrom of the $9926.30 awarded to the liens of clerks, mechanics and laborers.

The decree of the court is reversed, and it is ordered that the record be remitted, and redistribution be made of the fund in said court, also that the appellee pay the costs of this appeal.